UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAREDO ROBLE,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, SENIOR WARDEN,<br><br>                                    Respondents. | Case No.:  26cv843-LL-BJW<br><br>**ORDER DENYING WITHOUT PREJUDICE AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 5]** |

Before the Court is Petitioner Saredo Roble's Amended Petition for Writ of Habeas Corpus ("Pet.") pursuant to 28 U.S.C. § 2241. ECF No. 5. Pursuant to the Court's Order to Show Cause, Respondents filed a Return and Petitioner filed a Traverse. ECF Nos. 7, 8. Additionally, on March 11, 2026, the Court ordered the parties to file supplemental briefing and documents. ECF No. 9. Accordingly, Respondents lodged copies of agency documents provided by ICE counsel, including Petitioner's Form I-589 Application for Asylum and for Withholding of Removal, filed November 1, 2024, and the amendment to her application, filed on October 16, 2025. ECF No. 10 (Exhibits 7 and 8). The parties also submitted a Joint Supplemental Brief in which the parties state their respective positions identifying what date Petitioner sought asylum and/or withholding of removal protection and to which countries. ECF No. 11. After due consideration and for the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** the Amended Petition.

## I.      BACKGROUND

Petitioner is a native of Somalia and arrived to the United States on March 18, 2024. Pet. at 5; *see also* Return at 1 (citing Ex. 1, I-213 and Declaration of Jason Cole, ¶¶ 1-2).

1

She was encountered by U.S. Border Patrol after sustaining an injury at the border wall and was transported to a hospital. Ex. 1 to the Return, I-213 at 1-2. On April 5, 2024, Petitioner was taken into ICE custody and issued a Form I-862 Notice to Appear (NTA), charging her with inadmissibility under Immigration and Nationality Act § 212(a)(6)(A)(i). Ex. 2 to Return, NTA. On the same day, Petitioner was released from ICE custody on an Order of Recognizance. Ex. 3 to Return. On November 1, 2024, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal. ECF No. 10 at 3-14. On May 27, 2025, ICE re-detained Petitioner and issued a Notice and Order of Expedited Removal. Exs. 4, 5 to Return. On that same date, Petitioner was taken into custody and has remained there since. *Id*.; *see also* Pet. at 3. In the Joint Supplemental Brief, Respondents state that "[t]he agency believes this document [the May 27, 2025 Notice and Order of Expedited Removal] was served in error, as Petitioner had been placed in removal proceedings through the Notice to Appear filed in April 2024, and had already filed an application for Asylum and Withholding of Removal." ECF No. 11. Petitioner contends that "[e]ven accepting Respondent's newfound concession of error, that does not change that the expedited removal was issued, final, and controlling. Respondents provide no authority to the contrary." *Id.* at 5.

On October 16, 2025, Petitioner filed an amendment to her Form I-589 Application for Asylum and for Withholding of Removal, which corrected her list of residencies, indicating that she had resided in Uganda for certain periods of time. *Id.* at 16-19. On December 16, 2025, the Immigration Judge denied Petitioner's asylum application and ordered Petitioner removed to Somalia, and Uganda in the alternative, but granted withholding of removal to Somalia under INA § 241(b)(3). Ex. 6 to Return, December 16, 2025, Order of IJ. The IJ denied asylum, withholding of removal and protection under the Convention Against Torture (CAT) with respect to Uganda. *Id*. DHS waived appeal and

26cv843-LL-BJW

Petitioner reserved the right to appeal, but ultimately did not appeal. Accordingly, the IJ's decision became administratively final on January 15, 2026.[1]

Respondents state that "the agency has worked diligently to effectuate [Petitioner's] removal to Uganda" and that "efforts to remove Petitioner to Uganda are progressing." ECF No. 11 (citing Cole Decl. ¶¶ 10-11). Specifically, on February 26, 2026, Enforcement Removal and International Operations informed ICE that the travel document request was forwarded to the Ugandan government for review." Cole Decl. ¶¶ 13-14.

## II.     LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.    DISCUSSION

Petitioner argues in her operative Petition that her detention violates *Zadvydas* and 8 U.S.C. § 1231. Pet. at 9; *see also Zadvydas v. Davis*, 533 U.S. 678 (2001). Specifically, Petitioner states that "[t]he statute renders detention mandatory for three months after removal is ordered, and allowable after six months after removal is ordered only if there is a significant likelihood of removal in the reasonably foreseeable future." *Id*. Petitioner acknowledges that "ICE must detain her during the 'removal period,' which typically spans

---

[1] Respondents state in the most recent filing (the Joint Supplemental Brief) that the *Zadyvdas* clock started ticking on January 16, 2026 ECF No. 11 at 2. However in the Return, Respondents stated that Petitioner's removal order became final on January 15, 2026. ECF No. 7 at 1. Based on the Court's calculation of thirty (30) days following the issuance of the Immigration Judge's December 16, 2025 Order, that decision became administratively final on January 15, 2026. In any event, Petitioner is still within that 90-day removal period, for the reasons set forth below.

the first 90 days after the immigrant is ordered removed." *Id.* (citing 8 U.S.C. § 1231(a)(1)-(2)). Petitioner states that "after that, detention becomes discretionary." *Id*. Petitioner argues:

> Ms. Roble was ordered removed on May 27, 2025, and caselaw confirms that no admission of 'error' can change that. The *Zadvyda*s grace period has thus expired. Second, the government has not met its burden to show a significant likelihood of Ms. Roble's removal in the reasonably foreseeable future. Rather, the new documents show that she is functionally stateless after going through hell to reunite with her husband and daughter and that the government has made no progress since its last filing. Third, the government's new admission that the expedited removal order was issued in error during Ms. Roble's ongoing asylum proceedings raises a second reason that Ms. Roble should have been released: the government violated her due process rights in issuing an expedited removal order while she had pending removal proceedings. This Court should order her release on either ground.

ECF No. 11 at 4-5. Petitioner cites to *Guzman Chavez* to support her argument that "removability and withholding relief are distinct" and "the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." 594 U.S. 523, 537, 539 (2021). Petitioner is correct when she states that the Immigration Judge's grant of withholding of removal in December "did not reset the [*Zadvydas*] clock." ECF No. 8 at 4. However, *Zadvydas* "limits an alien's *post-removal-period* detention to a period reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 689 (emphasis added); *see* 8 U.S.C. § 1231(a)(1). Petitioner's removal period did not begin until the order of removal became administratively final on January 15, 2026. *See* 8 U.S.C. § 1231(a)(1)(B)(i).

Petitioner also relies on *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 (9th Cir. 2022) and *Riley v. Bondi*, 606 U.S. 259, 269 (2025). However, neither *Mendoza-Linares* nor *Riley* provide any authority regarding the administrative finality of an expedited removal order that was clearly issued in error while the Petitioner had a pending asylum claim. *Mendoza-Linares* merely illustrates the expedited removal process. *Id*. In *Riley*, the noncitizen was previously convicted of an aggravated felony, issued a Final Administrative

Review Order (FARO), and placed into expedited removal under 8 U.S.C. § 1228. 606 U.S. at 263-64. The noncitizen subsequently sought relief under CAT, and during withholding-only proceedings he was "granted deferral of removal to Jamaica under the CAT." *Id*. at 265. The Court held that the noncitizen's "FARO constituted 'the final order of removal' in this case" and that "withholding-only proceedings do not disturb the finality of an otherwise final order of removal." *Id*. at 267, 272. While Petitioner is correct that withholding-only proceedings do not affect an existing administrative final order of removal, this does not bear on the facts of the instant matter. In contrast to *Riley*, where the noncitizen was placed in 8 U.S.C. § 1228 expedited removal, issued a FARO, and sought relief via withholding-only proceedings, here, the Petitioner was placed in 8 U.S.C. § 1229a proceedings while seeking asylum. Accordingly, Petitioner did not have an administrative final order of removal until the conclusion of 8 U.S.C. § 1229a proceedings. *See* 8 C.F.R. § 1241.1(c) (an order of removal becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

Petitioner also relies on *Gil v. Warden, Otay Mesa Det. Ctr.*, No. 3:25-cv-03279-DMS-VET, 2025 U.S. Dist. LEXIS 261196, *9 (S.D. Cal. Dec. 17, 2025). In *Gil*, Petitioner sought relief from removal, seeking asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and relief under CAT. *Id.* On October 6, 2024, an Immigration Judge denied all relief and ordered the petitioner removed to Mexico, or, alternatively, Venezuela. *Id.* Petitioner appealed to the Board of Immigration Appeals, which was pending review at the time that the Petition was filed. *Id.* Because of the appeal, the petitioner did not have a final removal order and Petitioner's removal proceedings remained ongoing. *Id.*

Respondents disagree with Petitioner's contention that the May 27, 2025, Notice and Order of Expedited Removal is a final order of removal, and thus triggered the 90-day removal period under *Zadvydas*. ECF No. 11 at 3. Respondents contend that "the *Zadvydas* clock started ticking on January 16, 2026, bringing [Petitioner's] detention well within both the 90-day statutory mandate and the six-month period considered presumptively

reasonable under *Zadvydas*". *Id.* at 4. In support thereof, Respondents argue that the Immigration Judge did not issue the order ruling on Petitioner's asylum application until December 16, 2025, and Petitioner failed to appeal, and the removal order became administratively final on January 16, 2026. ECF No. 11 at 3 (citing 8 § U.S.C. 1231(a)(1)(B)).

The Court agrees with Respondents at this procedural posture. A noncitizen cannot simultaneously be placed in 8 U.S.C. § 1225(b)(1) expedited removal while at the same time seeking asylum under 8 U.S.C. § 1229a proceedings. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1158 (S.D. Cal. Oct. 1, 2025) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020) ("Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing."). Here, Petitioner had a pending application for asylum at the time that the May 27, 2025, Notice and Order of Expedited Removal was issued. Although Petitioner requests that the Court use the May 27, 2025, Notice and Order of Expedited Removal to govern the timing of Petitioner's *Zadvydas* claim, Petitioner has not presented the Court with any controlling authority, and the Court is not aware of any such authority, that would compel using the May 27, 2025, date. Accordingly, based on the facts before the Court, the Court finds that Petitioner's current detention falls under 8 U.S.C. § 1231(a)(2) because a final order of removal has been entered. The December 16, 2025, Order from the IJ, which became administratively final on January 15, 2026, controls when the 90-day removal period begins for purposes of Petitioner's *Zadvydas* claim. Petitioner is still within that 90-day removal period, and accordingly, at this time, the Court must **DENY** Petitioner's Petition.[2] The denial, however, is without prejudice to Petitioner refiling should her

---

[2] The Court declines to rule on the remaining issues in Petitioner's Petition at this procedural posture.

situation change, for example, should she be subject to prolonged detention after this 90-day period expires.

## IV.   CONCLUSION

For the reasons discussed above, the Court **DENIES** the Petition without prejudice. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED**.

Dated:  March 27, 2026

Honorable Linda Lopez
United States District Judge

26cv843-LL-BJW